UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00538-MOC

| | |
|---|---|
| ALI FAYEZ NASRALLAH, )<br>)<br>Petitioner, )<br>)<br>Vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | ORDER |

**THIS MATTER** is before the Court on petitioner's Motion to Vacate, Correct, or Set Aside Conviction and Sentence pursuant to 28 U.S.C. § 2255 (#1). Petitioner, who is represented by counsel, contends *inter alia* that the plea he entered to a Bill of Information in <u>United States v. Nasrallah</u>, 3:13cr189 ("<u>Nasrallah</u>"), was both unknowing based on a language barrier and involuntary based on coercion of counsel and the government. After consideration of the testimony and the exhibits presented at an evidentiary hearing, the Court determines that the petition is not supported by the evidence and the relief sought will be denied, all for the reasons that follow.

**I.**

Petitioner was charged in a Bill of Information with conspiracy to traffic and attempt to traffic in counterfeit goods from 2007 through December 2010, in violation of 18 U.S.C. §§ 371 and 2320(a). In addition, petitioner was charged with making false statements on his 2008 tax return, in violation of 26 U.S.C. § 7206(1). <u>Nasrallah</u> (#11). Petitioner, as part of a plea agreement waived indictment (<u>id.</u> (#13)) and entered a guilty plea to both counts of the Information. <u>Id.</u> (#12).

Honorable David S. Cayer, United States Magistrate Judge, conducted a Rule 11 proceeding and accepted the plea. <u>Id.</u> (#14). After the plea hearing, petitioner's retained counsel,

Mr. Verby, withdrew (Oral Motion 8/19/2017) and this Court appointed Mr. Terpening inasmuch as petitioner was then indigent. CJA 20 (#17). Mr. Terpening represented petitioner throughout the presentence, sentencing, and appellate process, and continues to represent petitioner on collateral review.

After a presentence investigation and the completion of a presentence report, id. (#20), a sentencing hearing was conducted. No objections to the Presentence Report were filed and none were expressed at sentencing. At sentencing, this Court asked petitioner "were the answers you gave the judge that day true and correct? Did you tell him the truth?" Petitioner answered "Yes, sir." Sentencing Transcript ("S.Tr.") (#36) at 3. Petitioner was then asked "[i]f I were to ask you those same questions that he asked that day, would your answers be the same?" Petitioner answered "Yes, sir." Id. When this Court asked defendant whether he was in fact guilty of the crimes he was pleading guilty to, defendant answered "yes." Id. The Court then reaffirmed the magistrate judge's acceptance of the plea. Id.

During sentencing, the Court adopted without objection the facts as provided in the Presentence Report and accepted the advisory guidelines range contained in the PSR. It was determined that petitioner's conduct carried a Total Offense Level of 23 and that he had a Criminal History of I, resulting in an advisory guidelines range of 46 to 57 months. The Court sentenced petitioner at the bottom of the advisory guidelines range to 46 months imprisonment on Count One and 36 months on Count Two, with both sentences running concurrently. Also relevant to the instant petition, the Court imposed restitution in the amount of $623,826.75 in accordance with the *Mandatory Victim Restitution Act*, which was *precisely* the amount of restitution determined in the unobjected-to PSR (#20 at pp. 8-9).

After entry of the Judgment (#26), defendant filed a Notice of Appeal (#28). The Court of Appeals for the Fourth Circuit reappointed Mr. Terpening to represent petitioner on appeal. Petitioner filed a motion to voluntarily dismiss the appeal, which was granted by the appellate court. Nasrallah v. United States, No. 14-4879 (4th Cir. May 28, 2015); Nasrallah (#40).

**II.**

In this Section 2255 proceeding, petitioner has asserted three claims. First, petitioner contends that his plea was not knowing and voluntary because: (1) it resulted from prosecutorial misconduct; (2) it was based on a misunderstanding of the terms of the plea agreement due to language barriers; and (3) it was attained through threats to his family by the government and his attorney (Mr. Verby) if he refused to sign the agreement. Second, he argues that he received ineffective assistance of trial counsel (Mr. Verby) based on statements made to him by his attorney, including statements regarding the maximum amount of time in prison or on probation that petitioner would face if he signed the proposed plea agreement. Third, petitioner argues that his plea was not knowing and voluntary because he was not afforded the assistance of an Arabic translator during plea negotiations or court proceedings, which is somewhat duplicative of the part two of the first contention.

In their moving papers, the parties have presented the Court with conflicting affidavits. Significantly, petitioner and his former counsel offered competing statements as to: (1) counsel's representations about the maximum sentence petitioner would face if he cooperated with the government and entered a plea in this case; (2) petitioner's abilities to understand the English language; (3) statements regarding potential prosecution of petitioner's family members; and (4) petitioner's understanding of his waiver of appellate rights. Due to factual discrepancies between the competing affidavits, an evidentiary hearing was conducted to aid the Court in determining the

merits of petitioner's claims. See 28 U.S.C. § 2255(b) (providing that an evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). Based on petitioner's allegations of a language barrier, the Court directed the Clerk of Court to have an Arabic/English interpreter available at the evidentiary hearing.

In advance of the hearing, the Court advised petitioner that he had the right to retain counsel of his own choosing, but, in an abundance of caution, appointed counsel based on petitioner's request for counsel found on page 13 of AO 243 (Petition (#1) at 12) and earlier affidavit of indigency in the underlying criminal action.[1] While Mr. Terpening was again appointed to represent petitioner, the Court directed that a new attorney, unaffiliated with the criminal action, be appointed. The Clerk of Court appointed Richard Tomberlin. Thereafter, petitioner retained Mr. Terpening and Mr. Herrmann, who appeared *pro hac vice* with Mr. Moors (Mr. Terpening's law partner). Mr. Tomberlin then withdrew. The government then filed a Motion to Disqualify (#14) Mr. Terpening as a potential witness, which this Court denied as moot based on Mr. Moors' presence as additional local counsel and petitioner's waiver of any conflict. See Order (#19). By the time of the hearing, the Court was satisfied that petitioner was well represented by conflict-free counsel (and/or counsel as to whom any conflict had been waived). Mr. Terpening was not called to testify at the hearing.

---

[1] The Court notes that petitioner testified at the hearing that his New York counsel, Mr. Herrmann, prepared the Petition. Mr. Herrmann did not, however, sign the Petition as counsel, but instead signed the certification of mailing "for Fouad Eshiekh, Arabic Interpreter." Petition (#1) at 12.

**III.**

An evidentiary hearing was conducted May 11, 2016, in Charlotte, North Carolina, at which petitioner appeared and was represented by Messrs. Terpening, Moors, and Herrmann. The government was also present and represented by Mr. O'Malley and Ms. Greenough. At the hearing, Mr. Nasrallah was the only witness called to testify on behalf of the petitioner. The government called: (1) defendant's former attorney, Mr. Verby; (2) petitioner's last pretrial services, Mr. Stoltenberg; (3) the case agent on the counterfeit goods trafficking, Homeland Security Special Agent Boze; and (4) the case agent on the tax charge, IRS Special Agent Ripley.

The Court heard the testimony of each witness, observed the demeanor of each witness, and asked clarifying questions when clarification was needed. After the conclusion of the hearing, the Court allowed each side an opportunity to file post-hearing briefs after the official transcript (#21) was made available. Respective counsel fully complied with such post-hearing requirements and filed timely briefs. The issues are now ripe for resolution.

**IV.**

Inasmuch as a number of petitioner's allegations cut across the contentions identified above, the Court will address those concerns first.

Foremost among those concerns is petitioner's claim that his plea was unknowing because neither his attorney nor this Court provided him with an Arabic/English interpreter. The Court notes from the outset that at no point did petitioner raise language concerns with any of the three judges who addressed him in the underlying criminal proceedings. Indeed, no judge, including the undersigned, perceived any difficulty in communicating with petitioner. At the sentencing hearing, petitioner was provided with an opportunity to allocate, and he said the following:

> Good morning, Your Honor. In 2010 police officer come to my house. They try to search my house. I cooperate with them. Whatever they asked me, I answer. They ask me if I know the suppliers. I took them to three places where all the supplies -- where they supply the goods and they know that, what it is. And this is why -- we buy the merchandise from the Chinese people and they have warehouses. Sometimes they change their warehouses, but we go buy from them wherever they go. This is all the suppliers I have. I don't have no information I hidden from them. If I help -- also I couldn't help because they ask me if you know somebody. I tell them no, this is all I have. And they ask me if you know some people get merchandise from China. No, I don't know because I buy my merchandise from those people. This is all I know. I am being told that but they don't believe me. This is all I could say about this. And I make a mistake. Okay. I should be punished for that. But to me it's no problem. I could be punished, but about my family. That is all.

Nasrallah (#36) S.Tr. at 20-21. The Court had no problem understanding petitioner at the time of sentencing and the Court perceived no problem on petitioner's part in understanding the Court inasmuch as he appropriately answered the Court's preliminary inquiries. See id. at pp. 2-5. While petitioner brought his own interpreter to the evidentiary hearing in addition to the interpreter hired by the Court, it was readily apparent to the Court as the hearing progressed that petitioner's claim that he did not sufficiently understand English to make a knowing plea was untrue. Indeed, while petitioner leaned heavily on the interpreters during direct examination, during cross his ability to understand English improved markedly to the point where the interpreters were no longer used. In fact, petitioner responded quickly and appropriately (albeit sometimes evasively) to most questions asked by the government.

Petitioner explained that his English language skills had improved after going to prison for a year and that he had taken an English language course in prison; however, the overwhelming evidence from everyone else who testified was that he had no problem communicating in English before he went to prison. Perhaps most compelling was the testimony from his former attorney, Mr. Verby, who testified that he perceived no problems in communicating with petitioner and that

6

he would not have hesitated to employ an interpreter if he detected any inability on defendant's part to communicate in English. Mr. Verby testified that practicing law in New York involved clients who spoke a multitude of languages and that hiring interpreters was an everyday occurrence and that if one was needed, he would have hired one. The Court found Mr. Verby's testimony to be highly credible. Petitioner's credibility was further harmed when he testified that he could not understand the Southern accent of Judge Cayer who conducted the Rule 11, but could understand the undersigned's questions as sentencing because the undersigned talked slower. Based on the entirety of petitioner's testimony, the inconsistency of that testimony with the testimony of the other witnesses, the implausibility of his testimony, and his demeanor, the Court concludes that his claims of inability to understand written or spoken English are without merit.

Second, in both his pleadings and his testimony, petitioner painted his former attorney, Mr. Verby, as incompetent and implied that he had abandoned him for months due to treatment for drug or alcohol addiction. In addition, he contended that his plea was involuntary as it was coerced by threats from law enforcement and his own attorney to the effect that if he did not accept the plea, his brother would be charged.

The credible testimony at the hearing revealed that by the time petitioner retained Mr. Verby, petitioner's home and business had already been searched pursuant to a warrant, his inventory of counterfeit goods had been seized, and he had voluntarily confessed – in English – to the agents who conducted a search. Thus, by the time Mr. Verby was retained, petitioner had already compromised his ability to attain a favorable plea agreement. The credible testimony indicated that petitioner sought out the counsel of Mr. Verby, an attorney with 41 years of experience in New York, and insisted that Mr. Verby meet with him and his brother in December 2010. Mr. Verby, recognizing that both petitioner and his brother were at risk, advised petitioner

to not speak to agents without counsel as it was likely his arrest was imminent, and that his brother should also seek his own counsel, which he did.

Mr. Verby then successfully negotiated a self-surrender of defendant in Charlotte more than a month later, even though an Arrest Warrant (Nasrallah (#2)) had been issued, and was able to attain for petitioner an unsecured bond. Based on petitioner's instruction that he did not want a trial or to fight the substance of the charges, Mr. Verby negotiated a plea to the Bill of Information that did not include the 20 year trafficking offense under 18 U.S.C. § 2320 charged in the Criminal Complaint (Nasrallah (#1)), but instead had as the guidelines driving offense a Section 371 conspiracy which carried a maximum penalty of five years. The plea agreement also limited the amount of loss, a factor which would also drive the advisory guidelines. As with any plea, that plea was not without concessions on the part of the defense, and included a routine agreement that neither the government nor the defense would seek a departure from the advisory guidelines range. Counsel also secured a debriefing, which was an opportunity for petitioner to earn a lesser sentence. In all, Mr. Verby was able to secure what was patently a favorable plea despite petitioner leaving very little for counsel to work with after the uncounseled confession. Thus, to the extent petitioner contends that Mr. Verby provided deficient representation in the plea negotiation process, that claim is without merit.

As to petitioner's allegation that he received ineffective assistance of counsel due to the incapacity or incompetence of counsel based on drug or alcohol abuse, the credible evidence at the hearing proved those contentions wholly unfounded. Not only did counsel assure that petitioner was represented at critical stages by qualified counsel out of his own pocket, the evidence showed that Mr. Verby's unavailability had nothing to do with substance abuse, but was the result of a serious and chronic *medical* condition requiring surgery and post-operative recovery.

As to petitioner's allegation that his plea was not knowing because counsel did not go over it with him, Mr. Verby's testimony was completely credible that, as was his practice, he went over and read the plea agreement to petitioner line-by-line, pausing after every couple of sentences to explain what that provision meant and to define difficult legal terms in layman's terms. Mr. Verby testified that based on his observations, he believed petitioner understood the plea agreement.

As to petitioner's allegation that the plea was involuntary or coerced, Mr. Verby testified that he advised petitioner it was up to him whether he wanted to take the plea offer. He testified that in no manner did he threaten petitioner or tell him that if he did not take the plea his brother would be arrested. He testified that at every turn petitioner did not want a trial, that he acknowledged his guilt in the conspiracy to traffic in counterfeit goods and in underreporting his income to the IRS, and that he agreed with terms of the plea agreement. The Court found Mr. Verby's testimony credible and petitioner's contrary allegations and testimony not credible.

As to petitioner's allegations that he was coached to answer the Rule 11 questions in a manner that would assure the Court's acceptance of the plea and disguise his inability to communicate in English, Mr. Verby recalled that they travelled to the plea hearing together and went over the plea agreement while waiting in airports. He also testified that he advised petitioner generally of what he believed the likely questions would be, but in no manner instructed petitioner to give false answers to the court. Mr. Verby's testimony reflected that he advised petitioner in precisely the same manner as would any experienced criminal defense attorney as to the terms of the plea and the possible range of punishment. As to any promises as to what the sentence might be, Mr. Verby testified he never tells a client what the sentence will be, but only tells them that it could be more or less than advisory guidelines range and could be anywhere from no incarceration to the statutory maximum. There is absolutely no credible evidence that Mr. Verby in any manner

9

coerced, threatened, improperly coached, instructed petitioner to lie, obfuscated any purported language barrier, or promised any particular outcome for petitioner or his brother if the plea was accepted.

As to petitioner's allegations that he only met with Mr. Verby in cars or restaurants, Mr. Verby's credible testimony established that they met a number of times at the law office of the attorney representing petitioner's brother inasmuch as their interests were well aligned. Mr. Verby testified that he had an office, but could not recall if he ever met petitioner at that office. As to the meeting in a car, Mr. Verby's testimony was credible that their first meeting was in a car, but that impromptu meeting was at petitioner's insistence due to the urgency of his legal needs. While he did not recall meeting at any particular restaurant, Mr. Verby testified that if there was one, it was for the convenience of petitioner who was by that time working difficult hours driving a cab. In any event, there is nothing inherently wrong with an attorney meeting with a client in any number of places as there is no ethical or even practical requirement that meetings take place in a law office. If by raising such contentions as to the place of meeting petitioner was attempting to call into question Mr. Verby's ability, such attempt was without purchase as it was abundantly clear that Mr. Verby was a seasoned attorney who not only provided petitioner with excellent representation, but continued to represent petitioner even when he was not being paid, associated another experienced attorney out of his own pocket when he was unable to attend the debrief, and only withdrew after the plea was accepted by this Court and insured continuity of representation through a CJA appointment.

## A.

With those determinations in mind, the Court turns to petitioner's first contention, which is that his plea was not knowing and voluntary because: (1) it resulted from prosecutorial misconduct; (2) it was based on his misunderstanding of the terms of the plea agreement due to language barriers; and (3) it resulted from threats to his family if he refused to sign the agreement. The above discussion of petitioner's allegations is incorporated by reference.

When considering a claim of prosecutorial misconduct, the court must determine "whether the conduct so infected the [plea process/trial/sentencing hearing] with unfairness as to make the resulting [plea process/trial/sentence] a denial of due process." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002) (quotation omitted). "The test for reversible prosecutorial misconduct has two components; first, the defendant must show that the prosecutor's ... conduct [was] improper and, second, the defendant must show that such ... conduct prejudicially affected his substantial rights...." Id.; see United States v. Caro, 597 F.3d 608, 624–25 (4th Cir.2010), *cert. denied*, 132 S. Ct 996 (2012). There was absolutely no evidence presented of any prosecutorial misconduct.

As discussed above, there was absolutely no credible evidence that supported petitioner's contention that he did not understand the terms of the plea agreement. To the contrary, the credible evidence presented convinced this Court that petitioner well knew the terms of the plea agreement and that there was no language barrier. Indeed, the evidence showed that petitioner (a naturalized citizen who had engaged in sophisticated business transactions, all be they unlawful, for years that involved complex business documents) was very capable of understanding and in fact well understood the plea.

Finally, there was no credible evidence that any threats were made against petitioner's family if he failed to accept the plea, either by the government or being passed along by Mr. Verby.

While Mr. Verby testified that petitioner's brother was at risk of prosecution because he was at the warehouse at the time of the search, he testified that the brother had at all relevant times excellent representation. Indeed, immediately before the Court sentenced petition, Mr. O'Malley stated at the sentencing hearing that "[h]is brother, who we couldn't make a case against, had deposits of …. [six] million dollars as well." Nasrallah, Sent. Tr. (#36) at 9. There simply is no evidence which supports petitioner's contention that anyone threatened his family in order to secure his plea. At the hearing, petitioner testified that Mr. Verby always told him that there was a "possibility" that his brother would be prosecuted and that no threats came directly from the government. Evid. Tr. (#21) at 72, 98. Mr. Verby testified that there was no promise or threat from the government not to prosecute Nasrallah's brother if Nasrallah agreed to plead guilty. Id. at 123-24, 145. Thus, petitioner knew immediately before sentencing that his brother was no longer even at risk.

The first claim is dismissed as there is a lack of credible evidence supporting any part of such contention.

**B.**

In his second contention, petitioner contends that he received ineffective assistance of trial counsel (Mr. Verby) based on statements made to him by his attorney, including statements regarding the maximum amount of time in prison that petitioner would face if he signed the proposed plea agreement. Petitioner further contends that counsel promised that he would receive probation and that he would transfer the case to New York, where, according to the testimony, Courts supposedly treat counterfeit goods trafficking less severely.

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S.

687, 687-91 (1984). In order to satisfy the performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id., at 687-88. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id., at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992). The prejudice prong is satisfied by showing that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id., at 694. The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citation omitted). If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." Id., at 1290, citing Strickland, 466 U.S. at 697.

In considering the prejudice prong of the analysis, the court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993).

Recently, the Supreme Court recognized the right to "effective counsel during plea negotiations." Missouri v. Frye, 132 S. Ct. 1399, 1407-08 (2012); see Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (same). While there is no constitutional right for a defendant to enter into a plea agreement, see Weatherford v. Bursey, 429 U.S. 545, 561 (1977) and the decision to initiate plea negotiations is ordinarily a strategic decision within the purview of defense counsel, Hawkman v. Parratt, 661 F.2d 1161, 1171 (8th Cir. 1981), counsel is still required to be a "reasonably effective advocate" regarding the decision to seek a plea bargain. Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir.

13

1993). Here, the credible evidence presented convinced this Court that Mr. Verby was, at a minimum, a "reasonably effective advocate" in securing a favorable plea. Indeed, his performance fell well *above* such threshold as he was able to secure a plea that reduced petitioner's exposure even after petitioner had voluntarily cooperated without any agreement in place. As to petitioner's contention that counsel was ineffective in advising him as to the amount of time in prison or that he would receive probation, the Court finds no support in the credible evidence presented. As to the contention that Mr. Verby promised to transfer the case to New York, the Court found Mr. Verby's testimony to be highly credible that he only told petitioner that he would attempt to have the case transferred under Rule, but that he was unable to secure the consent of both the outgoing and incoming United States Attorney's Offices. As discussed above, the advice Mr. Verby actually gave petitioner was in all aspects correct. Petitioner's case was in no manner prejudiced by his counsel. Quite the opposite: counsel was highly effective in achieving a favorable result.

The Court finds no merit in petitioner's second contention as Mr. Verby provided petitioner with highly effective assistance of counsel.

## C.

In his final contention, petitioner argues that his plea was not knowing and voluntary because he was not afforded the assistance of an Arabic translator during plea negotiations or court proceedings. While it would not go so far as to characterize petitioner's contention as a "charade" as the government's cross examination of petitioner suggested, the Court does find petitioner's contention that he was improperly denied an Arabic translator unsupported by any credible evidence of record. For the reasons discussed at greater length above, the overwhelming credible evidence was that petitioner was quite capable of communicating with his attorney, agents, and three judges of this Court in English.

The Court has also considered his final contention in light of the *Court Interpreters Act*, 28 U.S.C. § 1827 (2000). Under such provision, a court must utilize the services of an interpreter if the court "determines [on its own motion] or on the motion of a party that such party speaks only or primarily a language other than the English language" and will be "inhibited" in comprehending the proceedings, or communicating with counsel or the court. 28 U.S.C. § 1827(d)(1). Based on petitioner's contentions in his Petition, this Court prophylactically appointed an interpreter for the evidentiary hearing. However, at no point in the nearly four years between initial appearance and sentencing did petitioner ever request appointment of an interpreter. Indeed, petitioner appeared before three judges of this Court and at no time did his answers to any inquiry (as discussed at greater length above) suggest to any judge, including the undersigned, that an interpreter was needed. Petitioner has now twice appeared before the undersigned and based on this Court's observations of defendant's English language skills, no interpreter was needed.

As discussed above, most telling was Mr. Verby's testimony that at no time in his counseling of defendant did he believe an interpreter was needed. Albeit in an unpublished decision, the Court of Appeals held, as follows:

> On appeal, Amador contends that the district court plainly erred when it directed the question as to whether he needed an interpreter to defense counsel, not to Amador himself. Amador did not request the presence of a translator at the guilty plea hearing, and the district court made an assessment on its own motion that Amador understood the proceedings. Further, Amador did not give the district court reason to believe that his understanding of the proceedings was hindered by his language abilities. Accordingly, the district court did not plainly err in determining that Amador did not require an interpreter to understand the proceedings.

United States v. Amador, 214 Fed. Appx. 303, 306 (4th Cir. 2007). Even when considered in light of the Court Interpreter's Act, the Court cannot find that the petitioner was in any manner inhibited in comprehending the proceedings or in communicating with counsel or the court.

Petitioner's third contention is without merit.

15

**D.**

Review of the petition and pleadings reveals that petitioner also seeks to challenge the amount of restitution included in the Judgment as part of his petition. Petitioner's challenge to the amount of restitution is, as a matter of well-settled law, not cognizable in a § 2255 proceeding because it does not affect his custody. Section 2255 provides that:

> A prisoner in custody under sentence of a court ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "A reduction in restitution is not a release from custody." Blaik v. United States, 161 F.3d 1341, 1342 (11th Cir.1998) (collecting cases). "[I]t is well-settled that § 2255 relief may not be granted when the defendant challenges only a fine or restitution order." United States v. Coward, 230 F.3d 1354 (4th Cir.2000) (unpublished table decision). The fact that petitioner alleged ineffective assistance in the same petition with a restitution claim does not change this result, because he is still seeking to challenge a noncustodial restitution order. Kaminski v. United States, 339 F.3d 84, 85 n. 1 (2d Cir.2003) (recognizing that, even if defendant could show ineffective assistance with respect to restitution, the district court lacked subject matter jurisdiction to grant relief under § 2255). Therefore, to the extent petitioner's assertions can be construed to be connected with his contention that counsel provided ineffective assistance, such a claim is not cognizable under § 2255. If petitioner wanted to challenge the amount of restitution ordered in the Judgment, he should have challenged that issue on direct appeal.

**V.**

While the Court has first addressed the merits of petitioner's claims, the government has also moved to dismiss the claims (with the exception of ineffective assistance of counsel) as

procedurally defaulted. As it appears that petitioner failed to pursue those contentions on direct appeal, the Court has considered the government's motion as an additional basis for dismissal.

In order to collaterally attack a conviction or sentence through Section 2255 based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986). And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence. See id. at 496. As was made clear at the beginning of the hearing, defendant does not claim actual innocence but admits his guilt as to the Section 371 conspiracy and simply seeks "a better deal." Mr. Herrmann argued, as follows: "His other motivation for pleading was that he's guilty. He doesn't want to go to trial." Evid. Tr. (#21) at 18. Based on that admission alone, petitioner's claims that could have been (and were) raised on appeal (but voluntarily dismissed) are procedurally defaulted.

A Section 2255 motion is not a substitute for a direct appeal. Frady, 456 U.S. at 165. (1982). Claims of error that could have been raised before the district court and on direct appeal, but were not, are procedurally barred unless the petitioner shows both cause for the default and actual prejudice, or demonstrates that he is actually innocent of the offense. Id. at 167. In Bousley v. United States, 523 U.S. 614 (1998), the Supreme Court held that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct

17

review." Id. 621-22. "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). To show actual prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his actual and substantial disadvantage" and were of constitutional dimension. Frady, 456 U.S. at 170. Although petitioner's ineffective assistance claim was properly raised for the first time on collateral review, his other claims are procedurally defaulted due to his failure to litigate them on appeal, as well as his failure to argue cause or prejudice to overcome this default. Thus, petitioner has not shown cause for procedurally defaulting his due process claims.

## VI.

Finally, the Court has considered the imposition of costs against petitioner for the fees of the court-appointed interpreter. At the conclusion of the evidence, it was clear to the Court that petitioner's allegations of needing a foreign language interpreter were not just fabricated, but fabricated simply to "get a better deal."

In considering imposition of costs, the Court has closely considered the both the chilling effect such imposition would have on other litigants who may have an actual need for an interpreter and the diminishment any such award would have on the potential recovery of the victims in this case. While petitioner's attempted deception is in no manner condoned, the Court finds that the competing concerns predominate and will not impose costs.

Petitioner is, however, cautioned that other judicial officers might not strike the balance so favorably and that simply making things up to get a better deal is unacceptable. Indeed, the greatest harm in the filing the Petition was not the waste of taxpayer resources or even the waste of the

Court's time, but the spurious, uncalled for, and in the end unsupported allegations leveled against Mr. Verby, who is owed an apology.

VII.

Finally, the Court also notes petitioner's opening argument in which his counsel stated, as follows:

> What he's hoping for is a plea agreement that has in it one sentence that was in the U.S. attorney's response that they at sentencing agreed that the Court could go below the guidelines. That's not in the plea agreement. If we had a plea agreement with that sentence in it, we could avoid the hearing.

Evid. Tr. (#21) at 18. That relief would have done petitioner no good as this Court was well aware, that despite the language of the plea agreement that the sentence should be within the guidelines range (Nasrallah, S. Tr. (#36) at 6), it was free to vary below the guidelines. This Court then stated, "even when the parties agree that the sentence is within the guidelines, I always take another look at it anyway. In other words, I'm not -- I'm never -- I'm never bound by that." Id. at 30-31. As the Court explained at sentencing, petitioner had provided no reason for the Court to downward vary:

> I don't see any other reason based upon the plea agreement and everything else. We've got a plea agreement we're dealing with. I've looked at it. I've looked at where he is. And I think when you know as much as he knows -- I can vary for a lot of reasons. But when you know as much as he knows, before I -- before I let those -- none of these things come in as reasons for a departure. These are all variances. These are all family situations which the guidelines indicate standing alone are not something the court uses by itself. When I'm applying the 3553 factors, in order to bring those -- for me to bring those factors into play, I've got to have something else. And in this case the only thing I would -- that would open up the door for me is cooperation. That's the only thing that does that.

Id. at 15-16. Thus, even if the plea agreement had not prevented the parties from seeking a sentence outside the guidelines range, this Court was well aware that it could and Mr. Terpening certainly presented all the evidence he could to support such a variance. There simply was no basis that

19

would have warranted a variance. The sentence this Court imposed, which was at the bottom of the guidelines range, was and remains the appropriate sentence as there was no basis to vary downward.

**ORDER**

**IT IS, THEREFORE, ORDERED** that petitioner's Motion to Vacate, Correct, or Set Aside Conviction and Sentence pursuant to 28 U.S.C. § 2255 (#1) is **DENIED** and this civil action is **DISMISSED** with prejudice.

**Denial of Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this court declines to issue a certificate of appealability as petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484–85 (2000) (in order to satisfy § 2253(c) when court denies relief on procedural grounds, a petitioner must demonstrate both that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right). While petitioner was represented by counsel, this Court cannot find that a reasonable jurist would find this Court's assessment of petitioner's claims debatable or wrong based on the testimony presented as the claims found no support in any credible evidence.

Signed: May 1, 2017



Max O. Cogburn Jr.
United States District Judge